(122 So. 601)

## MITCHELL v. STATE. (4 Div. 437.)

Court of Appeals of Alabama. May 21, 1929.

Wilkerson & Brannen and Brassell & Brassell, all of Troy, and Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

Charlie C. McCall, Atty. Gen., and Merwin T. Koonce, Asst. Atty. Gen., for the State.

RICE, J. The appellant was tried and convicted of embezzlement under the first count of an indictment drawn under Code 1923, § 3960, which count reads as follows: "The Grand Jury of said County charge that before the finding of this indictment, S. M. Mitchell, alias Shack Mitchell, whose name is to the Grand Jury otherwise unknown, being the agent of R. W. Summerlin, did embezzle or fraudulently converted to his own use or to the use of another, or fraudulently secretes with intent to convert to his own use or the use of another forty-two bales of cotton which came to his possession by virtue of his office or employment."

After careful study of the record, we are of the opinion that it may be stated that the undisputed testimony tends to show the following facts:

Mitchell was a cotton buyer at Lapine, in Crenshaw county. In September, 1924, Mitchell bought 36 bales of cotton from R. W. Summerlin, which was then in a warehouse at Luverne and had Summerlin to ship it to Troy to order notify Bashinsky, Case & Co., and bring the bill of lading to him, agreeing that as soon as he could get the weights, etc., he would give him a check for the money. Summerlin shipped the cotton and in three or four days came back with the bill of lading and told Mitchell that he had decided not to sell the cotton and wanted to hold it until the next summer, but would have to borrow some money on it. Mitchell told him that he did not think Bashinsky, Case & Co. would lend money and hold cotton till August, but that the cotton would have to go into a warehouse and the money borrowed from the bank, and Mitchell suggested that he attend to the matter himself. But Summerlin insisted that Mitchell take a transfer of the bill of lading, see if he could arrange to keep it in the compress and, if not, put it in the warehouse. Mitchell agreed to this with the understanding that when Summerlin got ready to sell the cotton, after Mitchell had borrowed the money and lent it to Summerlin, he would come to Mitchell as he (Mitchell) would not "fool with it at all unless I was going to have an opportunity to buy the cotton." Mitchell had given Summerlin a memorandum or account sales for the cotton at the time he bought it, showing the grade, marks (R. W. S.) and weights of each bale. When Summerlin came back and wanted to hold the cotton and borrow money on it instead of selling it, at that time Mitchell indorsed on the accounts sale the following: "To be held until ordered sold under insurance protection. S. M. Mitchell." Mitchell took the bill of lading to Troy and had the cotton transferred to a warehouse in Troy, managed by Mr. Bassett, and took warehouse receipts in his own name. At this time Mitchell had 200 or 300 bales of cotton in this same warehouse. Bassett, at Mitchell's request, put the Summerlin cotton aside by itself, and it was separate in the warehouse.

On December 15th Summerlin came to Mitchell to borrow $1,000, but after the receipt was filled out for a thousand decided to take only $500. The receipt was then changed to $500, and Summerlin signed it. It reads as follows:

"Lapine, Ala. Dec. 15th, 1924.

"Received from S. M. Mitchell of Lapine, Ala. Five Hundred Dollars *Draw on cotton* shipped to Bashinsky Sept. 3rd, 1924, Bill of lading transferred to S. M. Mitchell Sept. 6th, 1924.

R. W. Summerlin."

At the time Summerlin made this $500 "draw." he told Mitchell "that he was going to want $2,500.00 and for defendant to make some arrangements to get that during February and March."

Summerlin asked Mitchell "to make arrangements to borrow that amount of money for him on that amount of cotton." Mitchell told him "it would have to be borrowed at the bank." Mitchell "tried to get him to borrow it himself," but he insisted on defendant borrowing it as he was not well acquainted "here in Troy," and when he got ready to sell he would come to defendant and "not go to the bank at all."

196

On January 2, 1925, Mitchell made a note to the First National Bank of Troy for $2,500 payable on demand. It is a regular collateral note. While on its face it carries 196 bales of cotton, there is a marginal memorandum 26 B/C to the left of Mitchell's signature.

On January 26, 1925, Summerlin gave Mitchell a receipt reading as follows:

"Lapine, Ala. Jan. 26th, 1925.
"Received from S. M. Mitchell of Lapine, Ala., One Thousand Dollars. *Loan on Cotton* in Troy, Ala.
"$1,000.00          R. W. Summerlin."

And on March 4, 1925, another receipt reading as follows:

"Lapine, Ala. March 4, 1925.
"Received from S. M. Mitchell of Lapine, Ala., One Thousand Dollars *on cotton* in Troy, Ala.
"$1,000.00          R. W. Summerlin."

On October 11, 1924, and again on October 24, 1924, Mitchell had borrowed $5,000 from the First National Bank of Troy on plain promissory notes, payable on demand, with waiver of exemptions, etc., but not describing any collateral nor containing any power of sale.

These notes are both stamped "Paid, February 18th, 1925." To pay these notes Mitchell sold on February 13, 1925, 117 bales of cotton to Georgia Cotton Company for $13,106.62.

This Summerlin cotton was sold by the First National Bank of Troy, Ala., to the Georgia Cotton Company over Mitchell's protest.

Murphree, the cashier of the First National Bank of Troy, on being asked if he had authority to sell the cotton when he did sell it, answered: "The note that I held gave me that authority."

Murphree "sold the cotton on the same day that Mr. Summerlin came to see him."

Bassett, the warehouseman, testified, "he (witness) did put the cotton aside by itself and it was separate in the warehouse"; that Mr. Mitchell never told him to ship the cotton, and that so far as witness knew "he never had anything to do with the sale or shipment of that cotton"; that he' (witness) kept it separate until he got the shipping order; "that he kept it separate on Mr. Mitchell's order."

It is true, there are some bits of testimony in the record, offered on behalf of the state, which conflict with some bits offered on behalf of the appellant. But in none of such instances are we of the opinion that such conflicts are of matters that are material to the question we are trying to decide. So, upon the undisputed testimony, we conclude, after careful study, that the appellant's motion for a new trial should have been granted.

If it be said that there was testimony sufficient, in the first instance, to carry to the jury the question of whether or not appellant in October, 1924, when he executed two notes to the First National Bank of Troy, upon the occasion of the execution of either of said notes, pledged, without authority, Summerlin's cotton, as security, yet, after reading the testimony in the bill of exceptions, we have no difficulty in concluding, and do conclude, that the weight of the evidence was so overwhelmingly to the effect that such was *not* the case—but that, on the contrary, it so convincingly appears that the said Summerlin cotton was pledged by appellant, and later sold by the First National Bank of Troy, under the note executed by appellant on January 2, 1925, that the verdict, if rested on the ground of the unauthorized pledging of the cotton in October, should have been, on motion, set aside by the court.

Likewise, we have no difficulty in concluding, and do conclude, that the overwhelming weight of the evidence is to thè effect that appellant was authorized to pledge the cotton as security for the note executed by him to the First National Bank of Troy on January 2, 1925.

The extent of misconduct on the part of appellant that is shown by the testimony in the record, or that is shown to the degree that a conviction for its commission could be sustained, is the misappropriation, if it should be found on proper inquiry to be misappropriation, of the overplus, or balance, in cash, paid to appellant for and on account of the Summerlin cotton, which it sold over his protest to pay the note of January 2, 1925, due it, by the First National Bank of Troy.

The indictment being for the embezzlement of *cotton*, of course the conviction could not be rested upon the embezzlement, if it was embezzlement, of this money. Pruitt v. State, 21 Ala. App. 113, 105 So. 429, Carr v. State, 104 Ala. 43, 16 So. 155.

For the error in overruling appellant's motion for a new trial, the judgment is reversed, and the cause remanded.

Reversed and remanded.